# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FRATERNAL ORDER OF POLICE ) <br> CHICAGO LODGE NO. 7, ) <br> JANET MONDRAGON, DAPHNE ) <br> SEBASTIAN, and RICHARD ) <br> VIRAMONTES, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY OF CHICAGO, ) <br> ) <br> Defendant. ) | Case No. 18-cv-3831 <br><br> Judge Robert M. Dow, Jr. |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Janet Mondragon, Daphne Sebastian, and Richard Viramontes (collectively "the Officers"), and the Officers' union, the Fraternal Order of Police Chicago Lodge No. 7 (collectively "Plaintiffs"), bring this suit against Defendant City of Chicago seeking relief under 28 U.S.C. § 1983 for the alleged violation of the Officers' due process rights (Count I) or, in the alternative, for this Court to compel arbitration of the Officers' claims (Count II). Now before the Court is Defendant's motion to dismiss [14] both counts under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants the motion in part and denies it in part. Count II is dismissed with prejudice, while Plaintiffs may proceed on Count I. The case is set for further status on February 12 at 9:00 a.m. The parties should be prepared to discuss whether this case should be consolidated with Case No. 17-cv-8469 before Judge Alonso given it involves the same facts and asserts nearly identical claims.

I. **Background**[1,2]

The Union and Defendant are parties to a collective bargaining agreement ("the CBA"). [1-1, at 2–86.] The CBA includes a grievance procedure. [*Id.* at 11–15.] The CBA states, among other things:

> A grievance is defined as a dispute or difference between the parties to this Agreement concerning the interpretation and/or application of this Agreement or its provisions. * * * The separation of an Officer from service is cognizable only before the Police Board and shall not be cognizable under this procedure * * *.
>
> Grievances challenging reprimands and recommendations for suspension (excluding * * * suspensions accompanied by a recommendation for separation) will comply with * * * [certain] procedures: * * *.

[*Id.* at 11 (§ 9.1), 13 (§ 9.6).] The CBA also states:

> Officers who receive a recommendation for discipline from eleven (11) to thirty (30) days a result of a sustained Complaint Register investigation (CR#) shall have one of three options, * * *: [including] [t]he filing of a grievance challenging the recommendation for discipline; * * *.
>
> When an Officer elects to file a grievance, the Lodge will have sixty (60) days from receipt of the investigative file to inform the Department whether the Lodge will advance the grievance to arbitration, and if so, whether the grievance will be advance to arbitration unless the parties mutually agree otherwise.

[*Id.* at 14 (§ 9.6(B)).] Appendix Q of the CBA provides the procedures for such arbitration, while Section 9.7 provides the arbitrator's authority. [*Id.* at 14, 48.]

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). While the Court may not consider matters outside the pleadings without converting the motion to a motion for summary judgment, Fed. R. Civ. P. 12(d), it may consider documents attached to the complaint as part of the pleadings. Fed. R. Civ. P. 10(c).

[2] The Court notes that one of the other officers discussed in the complaint, Sergeant Stephen Franko, has filed a separate action—*Policemen's Benevolent and Protective Association of Illinois, Unit 156-Sergeants et al v. City of Chicago*, No. 17-cv-8469 (N.D. Ill. Nov. 21, 2017) ("*Franko*")—that largely mirrors the instant action. See *Geinosky v. City of Chicago,* 675 F.3d 743, 745 n.1 (7th Cir. 2012) (in determining a Rule 12(b)(6) motion, a court may refer to information that is subject to proper judicial notice); *Barrow v. City of Chicago,* No. 13–cv8779, 2014 WL 1612712, at *3 n.2 (N.D. Ill. Apr. 21, 2014) (court dockets are properly subject to judicial notice in deciding a motion under Rule 12(b)(6). And that that court has already resolved a motion nearly identical to the instant motion. See 2018 WL 3533311 (N.D. Ill. July 23, 2018).

On August 30, 2016, Defendant's Superintendent of Police filed charges with the Police Board against the Officers, one other officer, and Sergeant Franko. [1, ¶ 21.] The charges recommended that that the Officers be terminated for violating the Chicago Police Department's Rules of Conduct in the aftermath of a police-involved shooting in late 2014. [*Id.* ¶¶ 19, 22–24.] Approximately one year earlier, prosecutors had criminally charged the fourth officer involved in that shooting ("the Charged Officer") with a crime related to the shooting. [*Id.* ¶ 19.]

The same day that the charges were filed, the Officers received suspension notifications. [*Id.* ¶¶ 22–24.] The notices stated that each officer would be suspended without pay for thirty days, effective September 2, 2016. [*Id.*] Each notice also stated that charges had been filed against the Officers with the Police Board seeking their termination. [*Id.*]

The Police Board operates under Rules of Procedure. [1-1, at 94.] Those rules require that:

> no later than seven (7) days after service of the notice of suspension a member of the Police Board or its Hearing Officer shall review the order of the Superintendent together with the reasons therefor and shall at that time determine whether suspension pending the disposition of charges is warranted.

[1-1, at 98.] Plaintiffs allege that on September 7, 2016, pursuant to rule quoted above, "a Hearing Officer for the Police Board submitted a memorandum stating that a continuing suspension beyond thirty (30) days without pay was warranted for * * * [the Officers] pending the disposition of the Board charges filed against them." [1, ¶ 26.]

On January 5, 2017, the prosecutor in the criminal case against the Charged Officer moved to intervene in the Officers' proceedings before the Police Board and sought an order staying the proceedings until the conclusion of the criminal trial. [*Id.* ¶ 27.] Likewise, on January 10, 2017, the presiding judge in the criminal case recommended that the Police Board stay its proceedings against the Charged Officer pending completion of the criminal proceedings against him. [*Id.* ¶

3

28.] In May, the Charged Officer also filed a motion with the Police Board requesting a stay of the proceedings against him until the adjudication of his pending criminal case. [*Id.* ¶ 30.] The Officers opposed any stay of the Police Board proceedings while they remained suspended without pay. [*Id.* ¶ 31.]

On June 12, 2017 the Police Board entered an order ("the Order") staying the proceedings against all the Officers, the Charged Officer, and Franko. [*Id.* ¶ 32.] In the Order, the Police Board confirmed that that the Officers' livelihood—the income from their jobs—constituted a property interest which entitled the Officers to due process protections, and that the stay of proceedings meant that the Officers would not receive discharge hearings for a "considerable period of time." [1-1, at 110–11.] The Police Board therefore concluded, "there is no basis for their continued suspension pending the hearings on the charges against them, and therefore [we] vacate[ ] the determinations by the hearing officer that suspension pending the disposition of charges is warranted." [*Id.* at 111.] But, the Police Board also "reserve[d] the right to reconsider [its] decision if any of [ ] the officers are charged criminally," and stated that it stood "ready to try their cases once going forward with the Police Board cases will no longer prejudice or jeopardize any criminal or constitutional right. Their cases will remain on the Board's docket of Cases." [*Id.*]

In light of the Order, Defendant reinstated the Officers on June 16, 2017, effective June 14, 2017. [1, ¶ 34.] By the middle of July, the Officers realized that Defendant would not grant them back pay or benefits for time they had been suspended. [*Id.* ¶¶ 36–39.] Consequently, the Union filed grievances on behalf of the Officers. [*Id.* ¶ 39.] Defendant asked that the grievances be withdrawn and refused to arbitrate the grievances when the Union attempted to advance the grievances to arbitration on September 26, 2017. [*Id.* ¶¶ 40–45.]

4

On November 14, 2017, the prosecutor announced that the Officers would not be indicted. [*Id.* ¶ 35.] Plaintiffs filed this suit on May 31, 2018. [1.] Defendant filed the instant motion on June 27, 2018, [14], which became fully briefed on September 26, 2018. [30.] The Court now resolves the motion.

## II.     Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiffs well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)).

### III. Analysis

**A. Plaintiffs may not compel arbitration.**

Although Count II is brought only in the alternative and the Court concludes Plaintiffs have stated a claim in Count I, see Section III(B) *infra*, it nonetheless addresses both of Plaintiffs' claim. In Count II, Plaintiffs seek to compel Defendant to arbitrate the grievances they filed to recover the back pay and benefits for the approximately nine months that the Officers were suspended. Defendant argues that the collective bargaining agreement between the parties does not provide for arbitration of this matter.[3] The Court agrees.

This Court, rather than an arbitrator, must decide whether a dispute is subject to arbitration, except where the parties have clearly provided otherwise. *AT&T Technologies, Inc. v. Communications Workers of Amer.*, 475 U.S. 643, 649 (1986); *International Broth. of Elec. Workers, Local 21 v. Illinois Bell Tel. Co.*, 491 F.3d 685, 687 (7th Cir. 2007). "'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *AT&T*, 475 U.S. at 649 (quoting *United Steelworkers of Amer. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). Thus, unless the parties clearly provide otherwise, the question of arbitrability is properly decided by a court, not the arbitrator." *Id.*

Plaintiffs' claim to compel arbitration is barred by the terms of the CBA between the Union and Defendant. Although the CBA does allow members to first file grievances and then arbitrate certain disciplinary matters, it explicitly excludes suspensions accompanied by a recommendation

---

[3] The Court notes that it generally would not have jurisdiction over a state law claim between two non-diverse parties unrelated to existing federal claim. See 28 U.S.C. §§ 1331, 1367, 1446; *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015) ("only in 'unusual cases' may a district court exercise its discretion to assert its supplemental jurisdiction" once federal claims have fallen out of the case before trial). Notwithstanding that general rule, however, § 301 of the Labor Management Relations Act allows courts such as this one to enforce an arbitration clause in a collective bargaining agreement. See *Policemen's Benevolent & Protective Ass'n of Illinois, Unit 156-Sergeants v. City of Chicago*, 2018 WL 3533311, at *1 n.1 (N.D. Ill. July 23, 2018) (citing *AT&T Technologies, Inc. v. Communications Workers of Amer.*, 475 U.S. 643, 646 (1986); *United Steelworkers of Amer. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).

for separation from that process. [1-1, at 13 ("Grievances challenging reprimands and recommendations for suspension (excluding * * * suspensions accompanied by a recommendation for separation)".]

It is clear from the complaint and the documents attached to it that although the suspensions initially were for 30 days, [1, ¶¶ 22–24], the discipline the Officers now complain of is a suspension longer than 30 days but shorter than 365 days, [*id.*, ¶¶ 36–38]. However, while the Police Board did vacate the "the determinations by the hearing officer that suspension pending the disposition of charges is warranted", it also stated that it stood ready "to try their cases once going forward with the Police Board cases will no longer prejudice or jeopardize any criminal or constitutional right." [1-1, at 111; see also 1, ¶ 32.] Consequently, the Officers still received a suspension accompanied by a recommendation for separation from service that the plain language of the CBA states falls outside the grievance/arbitration procedure. The Officers therefore may only plead their case before the Police Board, where it appears their cases remain stayed.

The fact that the CBA also provides for the grievance/arbitration of suspensions longer than 30 days but shorter than 365 days, [1-1, at 14 (§ 9.6(C))], does not change the analysis. Regardless of the length of the suspension that the Officers complain of, they remain subject to termination proceedings before the Police Board. Consequently, the CBA does not require Defendant to arbitrate the Officers' claims. The termination proceedings will remain where they belong—before the Police Board. Consequently, Defendant's motion is granted and Count II is dismissed with prejudice.

### B. Plaintiffs have alleged facts to plausibly state a § 1983 claim

No state or municipality may deprive an individual of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Nonetheless, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408

7

U.S. 471, 481 (1972). In *Mathews v. Eldridge*, the Supreme Court provided three factors for courts to weigh when determining what procedural protections a particular situation demands: (1) the nature of the private interest that will be affected; (2) the comparative risk of an erroneous deprivation of that interest with and without additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail. 424 U.S. 319, 335 (1976). At bottom, however, "[the] fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333.

Defendant does not dispute that the Officers have an interest in their salaries. Rather, it argues that the second and third factors tip the balance in its favor based on the facts Plaintiffs have alleged. Consequently, Defendant maintains that the Officers have not alleged a plausible due process claim.

Before examining the *Mathews* factors, however, a brief comment on Defendant's claims regarding the status of the Charged Officer's prosecution. Defendant asserts that unlike at the time that *Franko* was decided, "here, the fourth officer's trial is in progress, the prosecution has rested, and the trial will soon be concluded, so an end to the stay is in sight and the continuance of the stay is not indefinite." [30 at 5.] Although the Court may take judicial notice of the docket of other relevant cases on a motion to dismiss under Rule 12(b)(6), see *Geinosky,* 675 F.3d at 745 n.1; *Barrow*, 2014 WL 1612712, at *3 n.2, the Court does not have access to the relevant Illinois state court criminal docket nor the Police Board's docket—nor have the parties filed supplemental authority apprising the Court of the result in that case. It therefore cannot take notice of facts to which it does not have access. Consequently, the Court must take the allegations as to the status

8

of the Police Board and state criminal proceedings as they were presented in the complaint and the attached documents.

Those allegations demonstrate the following: (1) the Officers were suspended, without pay, from September 2, 2016 to June 14, 2017 (a total of 285 days) and (2) the termination proceedings, at which the Police Board will evaluate both the suspension and termination, have been stayed indefinitely and remain stayed. Consequently, the Officers have gone more than 24 months without a post-suspension hearing and there are no allegations, or evidence, before the Court regarding when that hearing may occur.

### 1. Private Interest

Defendants do not deny that the Officers have an interest in the portion of their salaries and benefits lost as a result of their suspension. However, as Defendant correctly points out, the Officers are entitled to back pay if the delayed hearing later concludes that the Officers should not be terminated. Defendant points to *Ciechon v. City of Chicago*, in which the Seventh Circuit stated that although such an "interest is not insubstantial, it does not compel the conclusion that a presuspension hearing is necessary to satisfy due process." 634 F.2d 1055, 1058 (7th Cir. 1980). That raises the key issue before the Court, whether the Court should weigh the Officers' interest in their lost salaries against the process the Officers have already received from a pre- or post-deprivation standpoint.

### 2. Risk of Erroneous Deprivation

Defendant argues that rather than analyzing the process that the Officers have received regarding their suspensions to this point under a post-deprivation framework as the *Franko* court did, 2018 WL 3533311, at *8–11, this Court should analyze the Officers' allegations under a pre-deprivation framework because the Officers' suspensions and terminations are inextricably

9

intertwined, and the Officers have not yet been terminated from the force. According to Defendant, the true interest at stake is the Officers' continued employment by the Chicago Police Department, and the Police Board's decision regarding that issue will determine whether the Officers are entitled to the claimed backpay and benefits.

Although Defendant is correct that the suspensions and pending terminations are inextricably intertwined and that a hearing officer initially held the suspensions warranted, more than 18 months have passed since the end of the Officers' suspensions. Furthermore, Plaintiffs have not asserted a facial challenge to the suspension and termination procedures like the plaintiffs in *Ciechon*. 634 F.2d at 1057 (examining a class's request for an injunction preventing the City from imposing suspensions prior to a full hearing). Rather, Plaintiffs simply assert that the delay of the Officers' post-suspension hearing violated their due process rights in this specific case. The Court will therefore analyze the question from a post-deprivation standpoint, especially considering that the Police Board itself lifted the Officers' suspensions after noting that their continued suspensions without pay could be a due process violation. [1-1, at 111.]

It is well settled under Supreme Court and Seventh Circuit precedent that failing to provide an adequately prompt post-suspension hearing can be a due process violation. See, e.g., *Federal Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 241–42 (1988) ("[T]he district court was properly concerned about the importance of providing prompt post-deprivation procedures in situations in which an agency's discretionary impairment of an individual's property is not preceded by any opportunity for a pre-deprivation hearing."); *Barry v. Barchi*, 443 U.S. 55, 66 (1979) ("In these circumstances, it was necessary that [plaintiff] be assured a prompt postsuspension hearing, one that would proceed and be concluded without appreciable delay."); *Jones v. City of Gary, Ind.*, 57 F.3d 1435, 1444 (7th Cir. 1995) ("Although we hold that [plaintiff's] right to due process of law

was protected with a post-suspension hearing, our inquiry does not end there. The post-suspension hearing must assure that [plaintiff] was provided with a 'prompt proceeding and prompt disposition' of the merits of his suspension.") (quoting *Barry*, 443 U.S. at 66).

As in *Franko*, the Officers' allegations here support the conclusion that the second *Mathews* factor counts in their favor given over 18 months have passed since the end of their suspension, and the Officers' hearings before the police board remain indefinitely stayed. See *Franko*, 2018 WL 3533311, at *5–6 (concluding in a nearly identical case that plaintiff had stated a due process claim); *D'Acquisto v. Washington*, 640 F. Supp. 594, 618 (N.D. Ill. 1986) ("Two years [between the suspension and Police Board review] does strike this court as too long, although it might not be if, for example, the delay was solely for the benefit of the officer involved. The issue needs factual development. This court needs to know not just how long but also why. Until it does, plaintiffs state a due process claim for delay of the evidentiary hearing.").

Defendants are correct that the second factor would count in their favor if the Officers' were challenging the mere fact that they were suspended pending a full hearing regarding their suspension and pending discharge. However, the case on which Defendant relies on for that point, *Ciechon*, recognized that a suspension must be followed by a prompt post-deprivation hearing. 634 F.2d at 1060 (remanding to the district court "to consider whether or not City procedures assure a prompt postsuspension hearing as required by the Due Process Clause."). Plaintiffs' have alleged facts that show that they have not received a prompt post-suspension hearing, and there are no indications it will happen soon. The second factor therefore weighs in Plaintiffs' favor.

### 3. Government Interest

Finally, as alleged by the Plaintiffs, the government interest at issue in this case does not tip the scale in Defendant's favor. This Court must consider the government's justification for

delaying a post-deprivation hearing when determining whether the delay of an employee's post-suspension hearing violates due process. See, e.g., *Mallen*, 486 U.S. at 242 ("In determining how long a delay is justified in affording a post-suspension hearing and decision, it is appropriate to examine * * * the justification offered by the Government for delay and its relation to the underlying governmental interest * * *."); *D'Acquisto*, 640 F. Supp. at 618.

Drawing all reasonable inferences in favor of Plaintiffs, the government's interest in the ongoing stay here appears not to be concerns over the Officers' interests or the Defendant's interest in quickly removing police officers from the street when they are accused of flagrant violations of police policy, but ensuring the prosecution's case against the Charged Officer is not undermined by the possible legal ramifications of compelling officers to testify against themselves in Police Board hearings. As the court noted in *Franko*, that may or may not be a sufficiently compelling state interest to warrant such a profound delay. See 2018 WL 3533311, at *6. For example, if the hearings could be conducted using the sworn testimony already procured during the Charged Officer's trial or other related legal proceedings, that would suggest any further delay is unnecessary. The place to answer those questions, however, is on a motion for summary judgment or at trial, not on a motion to dismiss. Consequently, the Court concludes the third factor weighs in favor of the Plaintiffs.

Because the balance of the three *Mathews* factors weighs in favor of the Plaintiffs on the facts as alleged, the Court concludes that they have stated a claim for a violation of their due process rights under the Fourteenth Amendment. Consequently, Defendant's motion is denied as to Count I.

## IV.   Conclusion

For the reasons explained above, the Court grants Defendant's motion in part and denies it in part.  Count II is dismissed with prejudice, while Plaintiffs may proceed on Count I.  The case is set for further status on February 12 at 9:00 a.m.

Dated:  February 4, 2019

_____
Robert M. Dow, Jr.
United States District Judge